UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
EMPLOYERS INSURANCE COMPANY OF
WAUSAU,

                     Plaintiff,

    -against-

AMERICAN IRON & CRANE INC.,

                    Defendant.
-------------------------------------------------------------x

Civil Action No. **1:23-cv-239 (FJS/DJS)**

**COMPLAINT**

**M A D A M S/S I R S:**

       Plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU ("Wausau"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendant AMERICAN IRON & CRANE INC. ("American Iron"), alleges as follows:

### JURISDICTION AND VENUE

       1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) by reason of the diversity of citizenship of the parties and the fact that the amounts in controversy exceed the sum of $75,000 exclusive of costs. This is an action for damages based upon breach of contract.

       2.     At all times hereinafter mentioned, Wausau was, and still is, a stock insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

       3.     At all times hereinafter mentioned, Wausau was, and still is, an insurance company duly authorized to conduct business within the State of New York.

4. Upon information and belief, at all times hereinafter mentioned, American Iron was, and still is, a corporation organized under the laws of the State of New York, with its principal place of business located at 2822 Curry Road, Schenectady, New York 12303

5. Upon information and belief, at all times hereinafter mentioned, Chefscape was, and still is, in the structural steel erection, rigging, and crane rental business.

6. This Court has venue over this matter pursuant to 28 U.S.C. §1391; American Iron resides in the Northern District of New York for purposes of venue.

## AS AND FOR A FIRST CLAIM FOR RELIEF

7. Wausau repeats and realleges each and every allegation contained in paragraphs "1" through "6" of this Complaint as through fully set forth at length herein.

8. At the special instance and request of American Iron, Wausau issued a Workers Compensation and Employers Liability Insurance Policy, No. WCC-Z11-B6T87X-010, with a policy period from July 1, 2020 to July 1, 2021, to American Iron, as the Named Insured (the "Wausau Policy").

9. The Wausau Policy provides, in part, as follows:

### PART FIVE- PREMIUM

**A. Our Manuals**
All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**B. Classifications**
Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

**C. Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

> 1. all your officers and employees engaged in work covered by this policy; and

> 2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

\* \* \*

**E. Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

\* \* \*

**F. Records**

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

**G. Audit**

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium.

Insurance rate service organizations have the same rights we have under this provision.

10.    The Wausau Policy, as amended by the Workers' Compensation Policyholder Notice of Right to Appeal Endorsement, provides, in part, as follows:

**Policyholder Disputes**

Policyholders are entitled to inquire, challenge and dispute issues relating to classification, ownership, premium auditing and/or other New York Compensation Insurance Rating Board ("Rating Board") rulings or decisions pertaining to this policy. Please refer to the New York Workers' Compensation Policyholder Notice of Right to Appeal process noted below.

Inquiries may also be directed to the New York State Department of Financial Services (DFS) at:

http://www.dfs.ny.gov/abouUcontactus.htm#consumer

or by calling the Consumer Hotline at 800-342-3736 (Monday through Friday, 8:30 AM to 4:30 PM).

**New York Workers' Compensation Policyholder Notice of Right to Appeal Process**

An insured, or its representative, (hereafter referred to as insured") may appeal the application of a rule or procedure contained in the New York Workers' Compensation & Employers' Liability Manual. Rules or procedures are defined as those determinations, either by a carrier or the Rating Board, which define the variables which make up, the policy conditions. Examples include: classification codes, ownership information, premium audits, and any other determination which may affect the policy.

To be considered for a review, a written request explaining the reason(s) for the appeal must be submitted to the Rating Board.

Upon receipt of the request for review, the following actions will be taken:

1. The Rating Board will review the request and respond to the parties within sixty (60) days, either granting the parties or their authorized representatives their request or sustaining the Rating Board's original ruling.

4

2. If not satisfied with the outcome of **1.** above, the parties may then request, in writing, a conference with members of the Rating Board staff. The request must state the nature of the complaint and supply any supporting documents. The appropriate Department Vice President or his or her designated representative will preside at the conference.

3. If the dispute is not resolved by the conference, the parties may then appeal to the Underwriting Committee of the Rating Board for a hearing to consider the staff ruling. This appeal must be in writing and must specify the reasons for the appeal and the nature of the complaint.

Following the Committee's receipt of the appeal request, the parties will be notified about the time and place for the hearing. The appeal will be heard at the next Underwriting Committee meeting for which appropriate time can be devoted to the matter.

After the hearing, the parties will be advised, in writing, of the Underwriting Committee decision on the complaint.

4. If the Underwriting Committee ruling is not satisfactory to either party, then the aggrieved party may request a hearing at the New York State Department of Financial Services to consider the disputed decision.

5. The decision of the New York State Department of Financial Services may be appealed to a court of law, by the parties involved or the Rating Board.

11.     The Wausau Policy, pursuant to its Premium Due Date Endorsement, provides as follows:

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. **The due date for audit and retrospective premiums is the date of the billing.**

12.     The Wausau Policy defines the term "you" as meaning American Iron.

13. The premium for the Wausau Policy is determined, in part, based upon an audit of American Iron's payroll during the policy period multiplied by rates set forth in the Wausau Policy.

14. Wausau duly conducted a physical audit of American Iron's payroll during the policy period the Wausau Policy.

15. As a result of the audit, the earned premium for the Wausau Policy was determined to be $852,442.

16. As a result of the audit, the surcharges and assessments for the Wausau Policy was determined to be $104,667.

17. As a result of the audit, the total earned premium, surcharges, and assessments for the Wausau Policy was determined to be $957,119.

18. American Iron has not inquired, challenged, or disputed issues relating to classification, ownership, premium auditing and/or other New York Compensation Insurance Rating Board ("Rating Board") rulings or decisions pertaining to the Wausau Policy in accord with the procedure set forth in the New York Workers' Compensation Policy Holder Notice of Right to Appeal endorsement set forth in the Wausau Policy.

19. On November 22, 2021, Wausau issued an invoice to American Iron for the outstanding premium, surcharges, and assessments due and owing on the Wausau Policy, which was $606,996 at that time.

20. After November 22, 2021, American either made payments to Wausau or received net credits on the Wausau Policy or from another policy in the sum of $98,613, leaving the sum of $508,383 due and owing.

21. Although duly demanded, American has failed and refused to pay the $508,383 due and owing from the final audit for the Wausau Policy.

22. By reason of the foregoing, Wausau has sustained damages of $508,383, plus interest at 9% per annum from November 22, 2021.

**WHEREFORE**, plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU demands judgment against defendant AMERICAN IRON & CRANE INC. in the sum of $508,383, plus interest at 9% per annum from November 22, 2021, and granting plaintiff the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: White Plains, New York
      February 22, 2023

                              Yours, etc.,

                              JAFFE & ASHER LLP

                              By: _____
                                  Marshall T. Potashner, Esq.
                              Attorneys for Plaintiff
                              WAUSAU INSURANCE COMPANY
                              445 Hamilton Avenue, Suite 405
                              White Plains, New York 10601
                              (212) 687-3000